Filed 9/30/24 White v. Suselo CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SCOTT WHITE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MARGARITA SUSELO,<br><br>     Defendant and Appellant. | A167795<br><br>(Alameda County Super.<br>Ct. No. 21CV003099) |

Margarita Suselo appeals from the trial court's grant of Scott White's request for a five-year renewal of a civil harassment restraining order entered pursuant to Code of Civil Procedure section 527.6 (section 527.6). She argues that the renewal was invalid because it was not supported by adequate evidence and that the trial court abused its discretion by possibly relying on an issue with the interpreter at the renewal hearing to find her not credible. We conclude that the record contains ample evidence to support the renewal, and no evidence that the trial court's credibility determination rested on bias. Accordingly, we affirm.

## BACKGROUND

The conflict between White and Suselo, who live in adjacent, single-family homes, initially arose due to trees and construction noise. Things escalated, and Suselo posted "no trespassing" signs depicting guns pointed at White's home; played loud music and television during the day and late at

1

night; made false police reports against White and his family; threw heavy objects at their shared fence; and pointed security cameras at and into White's house, including into his toddler's playroom. On March 17, 2022, the trial court entered a one-year restraining order that required Suselo not to harass or contact White and his family, to remain 100 yards away from the family, and not to play loud music. The court permitted Suselo to keep the signs on her property. The minutes for the initial hearing state: "Suselo acknowledges she is able to effectively communicate with Indonesian Interpreter . . . . The court proceeds without a Javanese interpreter."

Less than a year later, White filed a request to renew the restraining order for five years. In his declaration in support of the request, White stated that he and his family continued to fear Suselo and that she had violated the initial restraining order. Not long after the initial restraining order was entered, Suselo posted more signs with guns pointed at his property—a total of 27 such signs. She also hung "bizarre items such as [a] plastic toy lizard, wooden carved face masks, surgical masks and a teddy bear toy," which White believed were attempts to draw his child's attention toward the gun signs. Suselo added lighting to the signs, including a spotlight on the signs directly outside White's daughter's playroom.

White and his wife noticed a new recurring "noxious odor similar to that of burning plastic" when they were in their yard. On April 13, 2022, White smelled the burning odor when he was outside. He moved toward the front of his property to try to escape the smell, but it followed him and lingered in the air. When he was outside again later the same day, the smell returned; he walked to the front yard and saw Suselo at the fence line close to the source of the smell. The smell went away, but White had a sore throat and itchy eyes. When White checked his home security camera footage, he

observed Suselo on her side of the fence "hovering several times directly where [he] was working . . . . wearing what appear[ed] to be a facemask and goggles." White's wife recalled that she had smelled a similar odor coming from the fence line a few weeks earlier. White smelled it again on April 15.

Suselo and her family members asserted that the smell emanated from her cooking of Indonesian food; White was not persuaded that regular cooking could release a smell "so pungent and noxious" that it would travel out of Suselo's house and cause his physical symptoms. Other neighbors submitted a declaration echoing the reports of an intolerable, chemical burning smell emanating from Suselo's home that caused physical symptoms and did not smell like food cooking.

On May 7, 2022, Suselo played "obnoxiously loud music" for 45 minutes from her backyard. Afterward, Suselo built tarp coverings over her backyard, blocking all view of the yard and side fence. White continued to smell the burning odor periodically over the summer and fall. On October 15, 2022, Suselo again played music "very loudly." White's wife called the police, who came and reminded Suselo of the restraining order. Suselo turned the music down, but as the officer was leaving, White returned with his daughter and Suselo began making crying baby sounds. The burning smell returned that evening and on October 24 and 26. At 11:30 p.m. on October 26, Suselo began making crying baby sounds and yelled until 12:20 a.m. On November 4, 13, and 20, 2022, and January 5 and 21, 2023, the smell returned. On December 6, 2022, Suselo made crying baby sounds at the entire family.

On January 26, 2023, a neighbor informed White's wife that Suselo "had installed a flower bucket with wires attached to it holding two cameras

3

pointed at [the Whites'] backyard and [the] child's playroom." The cameras had been there off and on since 2021.

White, his wife, and Suselo appeared at the hearing. The same Indonesian interpreter who assisted Suselo at the 2022 hearing also appeared. Before testimony began, Suselo's counsel announced that Suselo wanted to waive the interpreter because she felt "she can speak for herself; she can speak in English properly." Suselo stated she had been speaking English for 24 years and she did not want the interpreter because he did not speak her native Javanese language. The court commented that the same interpreter had assisted at the previous hearing and White's counsel explained that the prior hearing had been continued several times to ensure Suselo access to an Indonesian interpreter, as she had requested. The court cited its greater comfort with having an interpreter available to assist Suselo.

The interpreter then asked to be relieved from interpreting, noting Suselo's waiver and his familiarity with Suselo's family. The court declined; Suselo was more than two hours late for the hearing and the court surmised that the issues with the interpreter might be a delay tactic. Suselo then stated she felt uncomfortable having someone she knew interpreting; the court responded that the interpreter was a professional and should be expected to act accordingly. Suselo expressed concern that if she were speaking in Javanese, the interpreter might not understand her, but if so, the court explained, the interpreter would ask for clarification. The court wanted to "make sure that [Suselo] underst[ood] the proceedings," and admonished the interpreter not to discuss the hearing outside court and to notify the court if Suselo said anything he did not understand.

Shortly after White began testifying, the interpreter asked to withdraw again, because Suselo was not listening and he felt uncomfortable after

4

Suselo's attorney expressed a lack of trust in the accuracy of his interpretation. White's attorney commented that "this is a tactic that she engaged in last time, of getting multiple continuances"; again noted that Suselo specifically requested an Indonesian interpreter and that she had no objection to the same interpreter at the last hearing; and suggested that the issue could affect her credibility. The interpreter then insisted on withdrawing, and did, after further discussion.

The court and Suselo's attorney conducted voir dire of Suselo to confirm her waiver of the interpretation service. Suselo testified that for 20 years she had lived in California and spoken English. She had worked as a security screener at the Oakland Airport and for the Oakland Unified School District. In both positions she spoke English. The court accepted Suselo's waiver, explaining that Suselo was "rebelling against" an interpreter and had sufficient experience speaking English to continue without one. The hearing proceeded.

White testified to the unidentified burning odor following him along the property line, the new signs and other items hung from Suselo's house, and the new illumination of the signs. White further explained that Suselo's actions were upsetting, made the family feel "miserable and harassed," and that when people visited their property, they were "scared that our neighbor is going to start shooting at any moment." White described having conversations with their four-year-old about the pictures of guns pointed at their house, and the loud crying baby noises Suselo made. White also testified to Suselo's increased use of security cameras that were pointed directly toward various parts of his home. White's wife described very rarely having guests over, warning potential guests about Suselo beforehand, and

5

not going into the backyard with their child for several years due to Suselo's conduct.

Suselo also testified, saying she posted the signs because the Whites scared her and her family. She denied burning chemicals in her backyard and said the odor was from Indonesian cooking. The court asked how cooking could cause the smell if Suselo had no barbecue or outdoor cooking facility, and confirmed that Suselo had not been barbecuing. With respect to the loud music, Suselo stated she did not have a speaker, but had a television, a computer, and an iPad.

The court explained that it did not find Suselo's testimony regarding the noxious smell credible because she denied cooking in the backyard. Under the court's further examination, White testified that the odor was nothing like cooking he had smelled before and such smells had not in the past caused him watering eyes or an allergic reaction. The court found White's reports credible.

At the conclusion of the hearing, the court renewed the restraining order. The renewed order continued to limit Suselo's contact with White and prohibited Suselo from "[p]lay[ing] excessively loud music or other amplified sounds directed at" White's home. Further, no third party was to "engage in restricted conduct on [Suselo's] behalf. [Suselo's] security cameras may only be trained/pointed and recording her own property, she may not record or point camera's [sic] at any part of [White's] property, egress or ingress." The order did not prohibit her posting of signs.

## DISCUSSION

Suselo claims two errors invalidate the renewed restraining order. She argues first that substantial evidence does not support the renewal; and second, that the trial court abused its discretion by assuming Suselo's

6

objections to the Indonesian interpreter were evidence of her bad faith. We review these issues for abuse of discretion, and the underlying factual findings for substantial evidence. (*Leahy v. Peterson* (2023) 98 Cal.App.5th 239, 252 (*Leahy*).)

## I. Reasonable Probability of Future Harassment

Section 527.6, subdivision (j)(1) authorizes a court to renew a civil harassment restraining order " ' "only when the trial court finds a reasonable probability that the defendant's wrongful acts w[ill] be repeated in the future." ' [Citations.] Renewal is not automatic, but subject to the court's discretion whether to renew the order and its duration." (*Leahy, supra,* 98 Cal.App.5th at p. 252.)

White cites three categories of evidence that support the trial court's finding that there was a reasonable probability of future harassment: the loud music, security cameras pointed at White's home, and the burning smells emanating from Suselo's property. White argues that the trial court's finding that Suselo was not credible further supports the issuance of the renewed order, insofar as the court found the smells White and his wife complained of were not from cooking.

Suselo primarily takes issue with White's reliance on the burning smell as evidence supporting the renewal, because the court did not enjoin Suselo from making the smell. But Suselo also acknowledges that "[t]he court might have . . . believed it would be impossible to enforce something as nebulous and subjective as whether a particular odor was offensive enough to violate a restraint against 'burning smells.' " In addition, that the court did not explicitly restrain the smells—the source of which no one could pinpoint— does not mean that it did not believe Suselo was causing the smells in some way and therefore that the smell was evidence of harassing conduct, which the order more generally does enjoin.

7

In addition, although Suselo is correct that we may not consider new evidence outside the appellate record and therefore we must disregard White's proffered evidence regarding Suselo's behavior after the renewed order was entered, we do not agree that *Cooper v. Bettinger* (2015) 242 Cal.App.4th 77 supports Suselo's case. Relying on that case, Suselo contends that the trial court abused its discretion by renewing the restraining order for the full five-year term authorized by section 527.6, subdivision (j)(1), based on limited evidence of new harassing conduct. But in *Cooper v. Bettinger*, the court's abuse of discretion turned on its incorrect reading of the statute—believing "that renewal under [subdivision (j)(1)] is 'to be mechanically granted merely upon timely application,' " and that it had no discretion to order otherwise. (*Cooper v. Bettinger*, at p. 89.) Suselo has made no showing that the trial court similarly misunderstood the scope of its discretionary authority here.

Suselo further notes that White cited only two instances of Suselo playing loud music after the restraining order took effect, compared to the "continuous loud music" before the order issued, showing that the issue "had all but dwindled away." But it was reasonable for the court to view this as evidence of the opposite—that even with a restraining order in place, Suselo's conduct continued, albeit to a lesser extent. Either way, the statute permits the court to renew the restraining order without any new evidence of harassment at all. (§ 527.6, subd. (j)(1) ["The order may be renewed, . . . for a duration of no more than five additional years, without a showing of any further harassment since the issuance of the original order"]; *Leahy*, *supra*, 98 Cal.App.5th at pp. 243–244, 257 [court may not renew restraining order past five-year limit without new evidence of harassment, but without such evidence may grant one or more renewals for up to a five-year total term].)

8

And given that Suselo continued her harassing conduct—both in old and new forms—there is no risk here that the basis for the original order has "become stale with the passage of time." (*Leahy*, at p. 258.) The court's reliance on evidence of the burning odor, the new signs, the crying baby noises, the additional instances of loud music, and the new security cameras was not an abuse of discretion.

## II.     Interpreter and Credibility Findings

Suselo next argues that "[a]rguments that a court should find a witness not credible because of language difficulties and foreign origin [are] obviously improper," and "there might well have been some legitimate difficulties in communication between Suselo and the court interpreter." Suselo cites *People v. Sandoval* (2007) 41 Cal.4th 825, 847 in support.

But *People v. Sandoval* discussed a trial court's discretion to choose among criminal sentence terms, not whether a court made a biased credibility finding. And the record here contains no indication that the court relied on the issue with the interpreter and White's counsel's argument to find Suselo not credible; she merely speculates that it did. "Absent any indication to the contrary, we must presume that the trial court followed the applicable law . . . ." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 500.) The court did, however, conclude that Suselo's testimony was not credible in part because she could not fully account for the burning smell. The court was well within its discretion to find that Suselo was not forthcoming about the smell—it confirmed that the odor was not from backyard cooking, did not smell like cooking, and caused White and another neighbor physical symptoms not attributable to cooking. We defer to the trial court's credibility findings because that court is in the best position to evaluate witness demeanor and to weigh conflicting evidence in the first instance. (*Harris v. Stampolis*, *supra*, at p. 498.)

9

We also do not find *FCM Investments, LLC v. Grove Pham, LLC* (2023) 96 Cal.App.5th 545 relevant here.  There, a private arbitrator concluded that one party's use of an interpreter was a tactical ploy to appear less sophisticated than she was, and on that specific basis found the party not credible.  (*Id.* at pp. 549, 551, 555.)  Here, although the court mused that Suselo's waiver of an interpreter might be a delay tactic, it made no credibility finding on that basis and in fact made every effort to avoid bias.  It sought to have the interpreter continue to assist Suselo to ensure she understood the proceedings, over both Suselo's and the interpreter's objections, and then to ensure Suselo had sufficient grasp of the English language to participate meaningfully in the proceedings without an interpreter.

Nor does *People v. Simmons* (2023) 96 Cal.App.5th 323, 332, 336—where the prosecutor equated the defendant's " 'ambiguous ethnic presentation' " with deceptiveness—bear on this case.  No similar issue was present here.  In any event, Suselo did not make a bias objection below, and we may deem the issue forfeited.

## DISPOSITION

The judgment is affirmed.  White may recover his costs on appeal.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
DOUGLAS, J. *

---

* Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10